AO 91 (Rev. 11/11) Criminal Complaint                                  AUSA Rick D. Young (312) 886-7660

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED
SEP 29 2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER: |
| v. | UNDER SEAL |
| NIKESH A. PATEL | 14 CR 546 |

## CRIMINAL COMPLAINT     MAGISTRATE JUDGE COX

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From in or about May 2013 to August 2014, at Lisle, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1343 | knowingly devised and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and caused interstate wire communications in furtherance of such scheme. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
SCOT W. GILL
Special Agent, Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: September 29, 2014

_____
*Judge's signature*

City and state: Chicago, Illinois

SUSAN E. COX, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS | ss

## AFFIDAVIT

I, SCOT W. GILL, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for three years. My current responsibilities include the investigation of white collar crime, including mail, wire, and bank fraud.

2. This affidavit is submitted in support of a criminal complaint alleging that NIKESH A. PATEL has violated Title 18, United States Code, Section 1343. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging PATEL with wire fraud, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and, other individuals, and my review of various documents and records.

### Summary of the Investigation

4. On September 25, 2014, agents of the FBI met with representatives and employees of Company A, which is a company engaged in the business of, among other things, acquiring loans guaranteed by the United States Department of Agriculture. During this meeting, employees and representatives of Company A

informed the FBI that, between May 2013 and August 2014, it had purchased 25 loans with principal amounts totaling over $150 million from a loan origination company operated by NIKESH A. PATEL in Orlando, Florida. The representatives and employees of Company A subsequently came to believe that the entities listed as the borrowers for the 25 loans did not exist and that documents submitted by PATEL to Company A and a Lisle-based affiliate of Company A reflecting that the USDA had guaranteed the loans were fabricated and falsified by PATEL.

5. FBI agents subsequently interviewed additional employees of Company A and its affiliated companies, and have reviewed various records related to Company A's dealings with PATEL. As described in more detail below, those interviews and records reveal, in part, that PATEL sold approximately 25 loans to Company A under the false pretense that those loans were guaranteed by the United States when, in fact, those loans were not guaranteed by the government. In connection with each loan, PATEL submitted, among other things, fabricated loan guarantee forms falsely reflecting that the USDA guaranteed a portion of the loan's principal amount and thereby caused Company A to provide millions of dollars to PATEL's company.

## Background

### *USDA's Business and Industry Guaranteed Loan Program*

6. The USDA administers various business programs to further its mission of supporting rural communities and enhancing the quality of life for rural

residents by improving economic opportunities, community infrastructure, environmental health, and the sustainability of agricultural production.

7. One of the programs administered by the USDA is the Business and Industry Guaranteed Loan Program. The purpose of the B&I Guaranteed Loan Program is to improve, develop, or finance business, industry, and employment and improve the economic and environmental climate in rural communities.

8. In order to be eligible for a loan under the B&I Guaranteed Loan Program, a borrower must be engaged in, or proposing to engage in, a business that will provide employment; improve the economic or environmental climate; promote the conservation, development, and use of water for aquaculture; or reduce reliance on nonrenewable energy resources by encouraging the development and construction of solar energy systems and other renewable energy systems.

9. According to the USDA website, the total amount of USDA loans to one borrower may not, with certain exceptions, exceed $10 million. The specific percentage of the loan amount that is guaranteed is a matter of negotiation between the lender and the agency. The maximum percentage of guarantee is 80 percent for loans of $5 million or less, 70 percent for loans between $5 and $10 million, and 60 percent for loans exceeding $10 million.

*NIKESH A. PATEL and First Farmers Financial, LLC*

10. As discussed further below, NIKESH A. PATEL holds himself out as the Chairman and CEO of First Farmers Financial, LLC, which is a company located in Orlando, Florida.

11. According to its website, First Farmers purportedly provides loans to customers in areas with populations of 50,000 or less in the following industries: hotels/motels, gas stations, medical use, assisted living facilities, energy financing, investment real estate, and owner occupied relate estate properties.

12. The website for First Farmers provides that PATEL is the Chairman and CEO of First Farmers and is responsible for all day to day activities of First Farmer's, including capital management, staffing, loan production, credit management, closing, portfolio and servicing management, and legal matters.

13. The website for First Farmers also provides that PATEL is a seasoned banker with more than seven years of his career having been focused on government-guaranteed lending under the Small Business Administration program as well as the B&I Guaranteed Loan Program of the USDA. The website states that PATEL is located in First Farmers' corporate headquarters in Orlando, Florida.

14. The website also lists the names of two other individuals and identifies them as Individual TG, the President and Chief Operator Officer; and Individual ED, the Senior Vice President and Chief Compliance Officer of First Farmers. These two other individuals are located in First Farmers' purported offices in Los Angeles, California and Fitzgerald, Georgia.

15. Based upon documents and information obtained from Company A and the USDA, First Farmers became authorized to act as an eligible lender as part of the USDA's B&I Guaranteed Loan Program in or around April 2012. The application submitted on behalf of First Farmers to the USDA bears the apparent

4

signature of PATEL. Further, copies of correspondence to First Farmers from the USDA is addressed to PATEL as managing member of First Farmers.

*Company A*

16. Company A is Milwaukee-based investment advisor firm that, among other things, funds and acquires USDA guaranteed loans originated by third party USDA approved lenders.

17. Company A places these loans into investment funds for Company A's clients. Company A's clients are fiduciaries such as community banks, qualified retirement plans, and municipalities and political subdivisions located largely but not exclusively in Illinois. According to representatives of Company A, these fiduciaries invest in these funds because the underlying obligations are guaranteed by the Full Faith and Credit of the United States of America, and are viewed by these fiduciaries as a relatively risk-free investment.

## Scheme to Defraud

*Dealings Between PATEL and Company A*

18. According to one of Company A's employees, Company A was introduced to First Farmers in 2013 through another individual who provided government guaranteed loans to Company A. Employees of Company A subsequently traveled to the office of First Farmers in Orlando, Florida to meet in person with PATEL. During this meeting, PATEL introduced himself and allowed Company A employees to inspect files at First Farmers' offices related to purported USDA guaranteed loans.

19. Company A subsequently confirmed through a third party that First Farmers was authorized to originate USDA guaranteed loans and agreed to begin doing business with First Farmers. Thereafter, Company A began to acquire what appeared to be USDA guaranteed loans from First Farmers.

20. Company A acquires loans from First Farmers as part of a repurchase agreement that is sometimes referred to as "repo" arrangement. This is a contractual arrangement between a buyer, a buyer's custodian, and a seller. As part of the arrangement, the seller of the loan (First Farmers) receives cash from a buyer (Company A) for securities (the loan documentation) with the promise by the seller to repurchase the securities. The securities serve as collateral to secure the seller's (First Farmers) agreement to repurchase the securities for cash and a custodian holds the securities.[1]

21. According to employees of Company A, despite the agreement by First Farmers to repurchase the securities, First Farmers has never repurchased any of the loans/securities back from Company A.

22. According to employees of Company A, they have dealt exclusively with PATEL in connection with these loans. The dealings have involved communications by email, by phone, and in person. For example, a Senior Vice President of Company A stated that he traveled to Orlando in the summer of 2014 to meet with PATEL. During this meeting, PATEL talked about how he had become an approved USDA lender, how he worked with independent third parties

---

[1] The custodian utilized by Company A is its Lisle-based affiliate. The Lisle-based affiliate retains the original securities in a vault at U.S. Bank.

who underwrite the loans for First Farmers, how he was in regular contact with the borrowers for the USDA loans to ensure that there are no issues with their ability to make payments on the loans, and First Farmers' sources for financing.

23. PATEL represented to employees of Company A and its affiliates that, although he outsourced some responsibilities to unnamed consultants, he essentially acted as a one-man loan committee in connection with the USDA loans originated at First Farmers. Specifically, records obtained from Company A reflect that PATEL provided the following information:

> It is out sourced -- as Nik pays consultants to refer loans, and to work with the USDA regional offices to identify borrowers looking for financing. When the loan appears to Nik -- a level of underwriting has preceded his review -- done by outside professional underwriter firms who also know what conformity is required by the USDA. Effectively Nik Patel serves as a one man loan committee -- reviewing the opportunities as they flow into him for consideration. The largest USDA regional office for his referrals is Georgia. The loans that he underwrites come from multiple regional offices and are by no means limited to Florida.

*Sale of 25 Fraudulent Loans by PATEL*

24. Records obtained from Company A show that, between May 2013 and August 2014, Company A acquired approximately 25 separate loans originated by First Farmers as part of the "repo" arrangement that purported to have been guaranteed by the USDA as part of its B&I Guarantee Loan Program. The purported loans related to various borrowers in Florida and Georgia with principal amounts ranging from $2,5000,000 to $10,000,000. The total principal amount of these 25 loans is well in excess of $150 million.

7

25. The records obtained from Company A, as well as interviews with employees and representatives of Company A and its affiliates, reflect that, in connection with each of the 25 loans, PATEL submitted a loan package that included, among other things, the following:

- A "Term Note" that purported to reflect the loan agreement between First Farmers and a particular borrower;

- A "Loan Note Guarantee" that purported to identify the portion of the loan that was guaranteed by the USDA and stated that the USDA agreed to pay holder of the loan "100 percent of any loss sustained by such [h]older on the guaranteed portion and on interest due on such portion."

- A "Loan Originator's Letter of Attestation (USDA Business and Industry Guaranteed Loan Assets)" that described certain information related to the loan, including the date of the loan, the borrower's name, the USDA Loan Identification Number, the balance of the assigned portion of the loan, and the next payment date. The Letter of Attestation also attested that, among other things, "the above information is true and correct" and that neither First Farmers or any of its directors, officers, managers, members, employees or agents have any actual or constructive knowledge of "any fraud or misrepresentation with respect to the [l]oan or the assignment of a portion of the [l]oan to the holder of the Attestation."

- An "Assignment Guarantee Agreement" reflecting, among other things, that the lender, First Farmers, had made a loan to the borrower and that a portion of the loan had been guaranteed by the United States of America through the USDA. The Guarantee Agreement also listed the loan amount, the portion purportedly guaranteed by the USDA, and the USDA loan identification number.

26. Employees of Company A became aware of certain inconsistencies during a routine review of documentation relating to First Farmer's loans in September 2014. These inconsistencies triggered a more thorough review of the loans. During this review, representatives and employees of Company A were,

among other things, unable to verify the existence or location of certain purported borrowers in connection with these loans.

27. As part of this review, representatives and employees of Company A also contacted an office of the USDA in Atlanta, Georgia to confirm whether or not the loans from First Farmers were, in fact, guaranteed by the USDA. During the ensuing communications, representatives of Company A provided the USDA with the purported names and USDA loan identification numbers for three of First Farmers' loans. The USDA later confirmed to representatives that it had no record of any of those names or loan identification numbers.

28. As part of its investigation, I have reviewed documents from all of the approximately 25 loans acquired by Company A from First Farmers. Each of the files contained the documentation discussed above, namely, a Term Note, a Loan Note Guarantee, an Assignment Guarantee Agreement, and a Loan Originator's Letter of Attestation.

29. More specifically, I reviewed each of the Loan Note Guarantee forms contained in the files for the First Farmers loans. Each Loan Note Guarantee contained a USDA loan identification number and the apparent signature of a State Director for the USDA in either Georgia or Florida.

30. I also reviewed each of the Loan Originator's Letter of Attestation contained in each of the files. The Letter of Attestation reflected the purported signature of PATEL certifying that, among other things, all of the information related to the loan in the letter, including the USDA loan identification number,

9

were true and that he did not have knowledge of "any fraud or misrepresentation with respect to the [l]oan or the assignment of a portion of the [l]oan . . . ."

31. I have also each of the Assignment Guarantee Agreements contained in the files for the First Farmers loans. As noted above, the Assignment Guarantee Agreements provided, in part, that First Farmers had made a loan to the borrower and that a portion of the loan had been guaranteed by the USDA. Each Assignment Guarantee Agreement contains the apparent signature of PATEL as well as the apparent signature of an USDA State Director.

32. Each of the files also contained a transmittal letter from First Funding to U.S. Bank bearing the purported signature of PATEL.[2] The letter also described various other items being transmitted to U.S. Bank, including the attestation letter and the Loan Note Guarantee.

33. I have compared the signature of PATEL appearing in the above referenced loan files to a known exemplar of PATEL's signature. According to a written statement provided by the Chief Executive Officer of Company A, PATEL signed the known exemplars on May 12, 2014 in the presence of the Chief Executive Officer. In my opinion, the signatures of PATEL from the known exemplars match the signatures of the PATEL appearing the documents appearing in the loan file,

---

[2] According to employees of Company A, the original loan package is sent to U.S. Bank via Federal Express for retention in a vault. U.S. Bank holds the original documents on behalf of Company A's Lisle-based affiliate (the custodian). Copies of the loan package are then sent to Company A's affiliate in Lisle, Illinois for entrance into its system. The Lisle-based affiliate then arranges for payment to First Farmers and, from Lisle, orders the transfer of funds to First Farmers' bank account.

including the transmittal letter, Assignment Guarantee Agreement, and the Letter of Attestation described above.

34. On or about September 26, 2014, the FBI contacted employees of the USDA through the Office of the Inspector for the USDA and spoke with a Deputy Administrator of the USDA for their business programs. The FBI provided the Deputy Administrator with the Loan Identification Number for each of the purported 25 loans described above as well as the names of each purported borrower. The USDA informed the FBI that it has no record of any such loans and that it had not guaranteed any of those loans.

*Interstate Wirings*

35. According to representatives and employees of Company A, PATEL routinely communicates from Florida with Company A and its Lisle-based affiliate by means of email and telephone. PATEL routinely uses the nik@firstfarmersfinancial.net email address in connection with these communications. Employees of Company A believe that PATEL is the person using the nik@firstfarmersfinancial.net email address because, at least in part, PATEL has have engaged in telephone conversations with them that relate to the substance of emails sent using the nik@firstfarmersfinanical.net email address. These employees are familiar with PATEL's voice through telephonic conversation and in-person meetings.

36. Company A's Lisle-based affiliate routinely receives emails from the nik@firstfarmersfinancial.net email address in connection with a request to

11

purchase purportedly USDA guaranteed loans from First Farmers. These emails typically included an attachment referred to as a trade ticket that describes, in part, the name of the borrower, the USDA loan identification number, the principal balance, and the guaranteed balance. For example, records obtained from Company A reflect that, on November 21, 2013, an email was sent from nik@firstfarmersfinancial.net to two employees of Company A's Lisle-based affiliate. The email reflected as follows:

> See attached trade ticket for [borrower name omitted]. I would like to add this loan to my REPO B facility. All documents are being sent via Fed Ex Overnight mail today to [name omitted] at U.S. Bank.
>
> Please let me know if you have any questions. Can you or [name omitted] please e-mail me back today to confirm that we will settle tomorrow?
>
> Thanks,
>
> Nik Patel
> xxx-xxx-0531.

37. The records obtained from Company A also reflect that a trade ticket was attached to the email sent on November 21, 2013. The trade ticket described, among other things, the name of the borrower, the USDA loan identification number, the principal balance, and the guaranteed balance.

38. Company A subsequently acquired the loan referenced in the November 21, 2013 email and its Lisle-based affiliate caused the wiring of funds to First Farmers, according to records obtained from Company A.

39. The borrower's name and UDSA loan identification identified in the November 21, 2013 email and attached trade ticket were included in the names and

loan identification numbers provided to the USDA, long with those relating to the other 24 loans. The USDA stated that it had no record of any such loan.

40. Company A records also reflect that, on February 18, 2014, another email was sent from nik@firstfarmersfinancial.net to the same two employees of Company A's Lisle-based affiliate. The email reflected as follows:

> Attached are two trade tickets for loans which I have put down to settle tomorrow.
>
> The [borrower name omitted] loan was closed yesterday (documents signed). But due to the bank holiday yesterday, it funded this morning. The USDA regulations require disbursement of loan proceeds prior to signing the guarantee and assignment documents. Since proceeds were funded by us this morning, we have someone from our Georgia office that is getting the guarantee and assignment signed this morning and driving it down to my office in Orlando. We will get originals here by 4pm today.
>
> I will FedEx everything out late this afternoon to [name omitted] via Priority Delivery for tomorrow morning.
>
> Please let me know if you have any questions. Thanks.
>
> Nik Patel
> xxx-xxx-0531.

41. The records obtained from Company A also reflect that a trade ticket was attached to the email sent on February 18, 2014. The trade ticket described, among other things, the name of the borrowers, the USDA loan number, the principal balance, and the guaranteed balance.

42. Company A subsequently acquired the loan referenced in the February 18, 2014 email and its Lisle-based affiliate caused the wiring of funds to First Farmers, according to records obtained from Company A.

43. The borrower's name and UDSA loan identification identified in the February 18, 2014 email and attached trade ticket were included in the names and loan identification numbers provided to the USDA. The USDA stated that it had no record of any such loan.

44. On September 25, 2014, FBI agents interviewed the president of an information technology company that provides information technology services to Company A and its Lisle-based affiliate. The president of this company stated that he was familiar with the email servers maintained by Company A and its Lisle-based affiliate. The president stated that any email from a person not employed by Company A or its Lisle-based affiliate that are directed to employees of Company A or its Lisle-based affiliate would be routed through an email server located in Lisle, Illinois. Emails directed to employees of Company A's Lisle-based affiliate would also be received and stored in servers located in Lisle, Illinois.

## Conclusion

45. Based on the information contained in this affidavit, the undersigned submits that there is probable cause to believe that NIKESH A. PATEL engaged in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and caused interstate wire communications in furtherance of such scheme, in violation of Title 18, United States Code, Section 1343.

FURTHER AFFIANT SAYETH NOT.

_____
SCOT W. GILL
Special Agent, Federal Bureau of Investigation


SUBSCRIBED AND SWORN to before me on September 29, 2014.

_____
SUSAN E. COX
United States Magistrate Judge